'O'

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABUNDANT LIVING FAMILY CHURCH,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LIVE DESIGN, INC,<br><br>　　　　Defendant. | 5:22-CV-00140-RSWL-MRWx<br><br>**ORDER RE: DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**[24] |

　　Plaintiff Abundant Living Family Church ("Plaintiff") brought the instant Action against Defendant Live Design, Inc. ("Defendant") alleging trademark and service mark infringement, false designation of origin, dilution, cybersquatting, unfair business practices (pursuant to Bus. & Professions Code §§ 17200, *et. seq.*), and receipt of stolen property. Currently before the Court is Defendant's Motion for Judgment on Pleadings [24] ("Motion"). Having reviewed all papers submitted pertaining to the Motion, the Court

1

**NOW FINDS AND RULES AS FOLLOWS:** the Court **DENIES in part** and **GRANTS in part** Defendant's Motion **WITHOUT LEAVE TO AMEND.**

## I. BACKGROUND

### A. Factual Background

The Complaint alleges:

Since 1994, Plaintiff has been known as Abundant Living Family Church or "ALFC." Compl. ¶ 11, ECF No. 1. Twenty years after Plaintiff first used the "ALFC" mark, Defendant purchased the domain name www.alfc.church. Id. ¶ 15. Two years after Defendant's purchase, Plaintiff registered the domain name www.alfcrancho.church ("Rancho Website") in reference to Plaintiff's Rancho Cucamonga church. Id. ¶ 12. Plaintiff planned to open another church in Pomona and "remove the 'rancho' portion of its existing URL." Id. ¶ 14. However, upon learning that Defendant owned the domain name www.alfc.church, Plaintiff asked to purchase Defendant's URL. Id. ¶ 16.

Defendant responded to Plaintiff's request offering to sell Plaintiff "web design and hosting services." Id. ¶ 17. Plaintiff initially refused, but later accepted Defendant's offer after the Rancho Website was attacked and disabled. Id. ¶¶ 18-19. Plaintiff signed a contract with Defendant to obtain the URL www.alfc.church. Id. ¶ 19. Defendant then signed a second contract with Plaintiff, offering "certain branding and brand management services, graphic design,

project management, and web design and development services." Id. ¶ 21. After fifteen months without receiving the website, Plaintiff requested Defendant deliver the uncompleted product. Id. ¶ 24. Defendant refused and instead claimed that Plaintiff must enter an additional contract. Id. Plaintiff insisted on the domain www.alfc.church transfer along with the backend coding, but Defendant refused. Id. ¶ 25.

**B.   Procedural Background**

Plaintiff filed its Complaint [1] on January 24, 2022. Defendant filed the instant Motion [24] on August 26, 2022. Plaintiff opposed [26] on September 6, 2022, and Defendant replied [29] on September 13, 2022.

## II.   DISCUSSION

**A.   Legal Standard**

Federal Rule of Civil Procedure 12(c) states that "after the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is "functionally identical" to a Rule 12(b)(6) motion to dismiss for failure to state a claim, meaning the same pleading standards apply. Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989). The non-moving party's allegations must be accepted as true, and any allegations made by the moving party that have been denied or contradicted are assumed to be false. MacDonald v. Grace Church Seattle, 457 F.3d 1079, 1081 (9th Cir. 2006). Judgment

on the pleadings is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Turner v. Cook, 362 F.3d 1219, 1225 (9th Cir. 2004) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002)).

In ruling on a motion for judgment on the pleadings, courts may consider documents attached to the complaint, documents incorporated by reference into the complaint, or matters properly subject to judicial notice. United States v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." Id. at 908.

**B.   Discussion**

1.   Judicial Notice

An adjudicative fact may be judicially noticed when it is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Matters of public record may be judicially noticed, but disputed facts contained therein may not. Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018). "[A]ccuracy is only part of the inquiry under Rule

201(b)." Id. "A court must also consider—and identify—which fact or facts it is noticing from" the documents. Id. The document a party requests to be judicially noticed must be relevant to the matter before the court. Townshend v. Rockwell Int'l Corp., No. C 99-0400 SBA, 2000 U.S. Dist. LEXIS 5070, at *7-8 (N.D. Cal. Mar. 28, 2000).

It is common "for courts to 'take judicial notice of factual information found on the world wide web.'" Turner v. Samsung Telcoms. Am., LLC, No. CV 13-00629-MWF (VBKx), 2013 U.S. Dist. LEXIS 198631, at *3-4 (C.D. Cal. Nov. 4, 2013) (quoting O'Toole v. Northrop Grumman Corp., 499 F.3d 1218, 1225 (10th Cir. 2007)). Furthermore, this Court may judicially notice publicly accessible websites. Perkins v. LinkedIn Corp., 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014); Aguiar v. MySpace LLC, No. CV-14-05520(SJO)(PJWX), 2017 U.S. Dist. LEXIS 165463, 2017 WL 1856229, at *9 n.6 (C.D. Cal. May 5, 2017) (judicially noticing website screen shots).

Defendant seeks to judicially notice twenty-three documents. See generally Defendant's Req. for Judicial Notice ("Defendant's RJN"), ECF No. 25. The first document is a printout of the United States Patent and Trademark Office ("USPTO") website that depicts zero results in the USPTO database for a registered trademark for the acronym "ALFC" ("Exhibit A"). The second document is a printout of the Trademark Electronic Search System ("TESS") website showing there was a

trademark registered in 2017 that uses "ALFC" in part of its mark ("Exhibit B").  Exhibits A and B are susceptible to judicial notice because, as official documents from the USPTO and TESS, they are not subject to reasonable dispute.  See Dehoog v. Anheuser-Busch InBev SA/NV, 899 F.3d 758, 763 n.5 (9th Cir. 2018) (taking judicial notice of "government documents, court filings, press releases, and undisputed matters of public record").

The next twenty-one documents are all printouts of websites using the acronym "ALFC" in the second-level domain name, companies' websites with "ALFC" as the companies' initials, or church websites with similar names to Plaintiff's name.  See generally Defendant's RJN.  The Defendant requests the Court judicially notice that the websites exist, but not judicially notice specific facts contained in the websites.  See generally id.  These 21 documents are susceptible to judicial notice because they are publicly accessible websites that are not subject to reasonable dispute.  See Aguiar v. MySpace LLC at *9 n.6 (judicially noticing "relevant publicly accessible company web sites").  Therefore, because Plaintiff does not dispute Defendant's printouts, the printouts are not subject to reasonable dispute, and they are relevant to the instant Motion, the Court **GRANTS** Defendant's requests for judicial notice as to all twenty-three documents.

Plaintiff seeks to judicially notice three

documents. See generally Plaintiff's Req. for Judicial Notice ("Plaintiff's RJN"), ECF No. 26-1. The three documents are: (1) a printout of the website ICANN archives; (2) a printout of the website Domain Name Sanity; and (3) a printout of the website Go Daddy. See generally id. Although Plaintiff's three documents may be judicially noticed as publicly accessible websites, Plaintiff does not specify which relevant facts it seeks to judicially notice from the three filings. Furthermore, the documents are not pertinent or necessary to the Court's resolution of the instant Motion and the Court does not rely upon them. Therefore, the Court **DENIES** Plaintiff's requests for judicial notice in their entirety.

    2. All Six of Plaintiff's Claims Rely on Plaintiff Having a Protectable Trademark Right in "ALFC"

Defendant asserts in its Motion that a valid and protectable mark serves as the basis for all of Plaintiff's claims. See generally Mot. Plaintiff has alleged it has been using the name "ALFC" regularly since 1994. See Compl. ¶ 11. Plaintiff does not dispute that it is essential that it has a valid protectable mark in "ALFC" for all its claims. See generally Opp'n.

Plaintiff's first three claims - trademark and service mark infringement, false designation of origin, and trademark dilution - all require Plaintiff to own a valid protectable mark. Levi Strauss & Co. v. Blue

7

1 Bell, Inc., 778 F.2d 1352 (9th Cir. 1985) (holding that
2 to prevail on its federal claims - trademark
3 infringement, false designation of origin, and dilution
4 - plaintiff must establish that it has a protected
5 interest).  To bring a trademark infringement claim
6 under 15 U.S.C.S. § 1114, the protectable mark must be
7 registered.  See Brookfield Commc'ns., Inc. v. W. Coast
8 Entmt Corp., 174 F.3d 1036, 1046 n.8 (9th Cir. 1999).
9     Plaintiff's fourth claim for cybersquatting also
10 requires Plaintiff to own a protected mark.  DSPT
11 Intern., Inc. v. Nahum,624 F.3d 1213 (9th Cir. 2010).
12     Plaintiff's unfair business practices (pursuant to
13 Bus. & Professions Code §§ 17200, *et. seq.*) claim arises
14 from Plaintiff's four previous claims which each require
15 a valid trademark right.  See Krantz v. BT Visual
16 Images, LLC., 89 Cal. App. 4th 164, 178 (2001) (holding
17 that relief under unfair competition law "stand[s] or
18 fall[s]" depending on the outcome of the antecedent
19 causes of action).  Given that Plaintiff's fifth claim
20 is based on its first four claims, Plaintiff's fifth
21 claim requires a valid enforceable trademark right in
22 "ALFC."  See AMN Healthcare, Inc. v. Aya Healthcare
23 Services, Inc., 28 Cal. App. 5th 923, 950 (2018).
24     Lastly, Plaintiff's sixth claim for receipt of
25 stolen property requires Plaintiff to own property that
26 was allegedly stolen.  See Finton Constr., Inc. v. Bidna
27 & Keys, APLC, 238 Cal. App. 4th 200, 213 (2015).  Given
28 that the only property that Plaintiff alleges that

1  Defendant stole was Plaintiff's domain name, Plaintiff
2  must have a valid protectable mark for its sixth claim.
3  See Compl. ¶¶ 75-76.  Therefore, Plaintiff's claims rely
4  on Plaintiff having a valid protectable mark in "ALFC."
5     3.  Plaintiff Does Not Have a Registered Trademark
6         in "ALFC"
7  The Lanham Act defines a trademark as "any word,
8  name, symbol, or device, or any combination thereof"
9  used by any person "to identify and distinguish his or
10 her goods, including a unique product, from those
11 manufactured or sold by others."  Marketquest Grp. Inc.
12 v. BIC Corp., 316 F. Supp. 3d 1234, 1256 (S.D. Cal.
13 2018) (citing 15 U.S.C. § 1127).  A trademark can be
14 protectable if it is either registered with the USPTO or
15 unregistered while meeting certain requirements.  Wal-
16 Mart Stores v. Samara Bros., 529 U.S. 205, 210 (2000).
17    Here, Plaintiff does not allege in its Complaint
18 that it has any registered mark with the USPTO.  See
19 generally Compl.  Furthermore, the USPTO also does not
20 have any record of an "ALFC" trademark registered by
21 Plaintiff.  See Defendant's RJN.  Plaintiff's first
22 claim for trademark infringement protects only
23 registered trademarks.  See 15 U.S.C.S. § 1114;
24 Brookfield Communs., Inc. at 1046 n.8.  Without
25 registering with the USPTO, Plaintiff cannot have a
26 registered trademark, and therefore cannot assert a
27
28

claim under 15 U.S.C.S. § 1114.[1]  See Wal-Mart Stores at 210.

Accordingly, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings as to Plaintiff's 15 U.S.C.S. § 1114 trademark infringement claim.

### 4. Plaintiff Sufficiently Pled It Has an Unregistered Trademark in "ALFC"

To sustain a trademark-infringement action, the plaintiff must have a mark that is valid and protectable. Zobmondo Entertainment, LLC v. Falls Media, LLC, 602 F.3d 1108, 1113 (9th Cir. 2010). Registered marks are presumed valid, but plaintiffs asserting rights in an unregistered mark have the burden of proving their mark's validity. Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 928 (9th Cir. 2005). An unregistered trademark can be valid and protectable against potential infringers. Matal v. Tam, 137 S. Ct. 1744, 1747 (2017).

The mark's protectability largely depends on its inherent distinctiveness. Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd., 525 F. Supp. 3d 1145, 1222 (S.D. Cal. 2021). Accordingly, marks are classified in categories of increasing distinctiveness within the

---

[1] While Plaintiff's first claim for trademark infringement under 15 U.S.C.S. § 1114 requires Plaintiff's trademark to be registered, Plaintiff's other five claims do not require Plaintiff's trademark to be registered. See generally 15 U.S.C.S. § 1125; Cal. Bus. & Prof. Code § 17200; Cal. Penal Code § 496.

Abercrombie spectrum: 1) generic; 2) descriptive; 3) suggestive; 4) fanciful; or 5) arbitrary. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992). Generic marks are the weakest category and do not receive protection because they identify the product, rather than the product's source. Yellow Cab Co. of Sacramento, 419 F.3d at 927. Descriptive marks "define a particular characteristic of the product in a way that does not require any exercise of the imagination." Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 632 (9th Cir. 2005). Descriptive marks must acquire distinctiveness (secondary meaning) to be protectable. Id. Suggestive, fanciful, or arbitrary marks are deemed "inherently distinctive" and are protectable since "their intrinsic nature serves to identify a particular source of a product." Zobmondo Entertainment at 1108.

        a. *Plaintiff's Moniker "ALFC" Is Not Evidently Generic Under the Ninth Circuit Court's "Who-Are-You/What-Are-You" Test*

The Ninth Circuit employs the "who-are-you/what-are-you" test to determine whether a contested mark is generic. Threshold Enters. Ltd. V. Pressed Juicery, Inc., 445 F. Supp. 3d 139, 148 (N.D. Cal. 2020) (quoting Yellow Cab Co. of Sacramento, 419 F.3d at 929). The test 1) identifies the category of goods or services to which the mark applies and 2) analyzes whether the relevant public primarily perceives the mark to represent the product's source or the product itself.

1  Id.  Ultimately, the test asks "whether consumers
2  understand the word to refer only to a particular
3  producer's goods or . . . to the goods themselves."
4  Yellow Cab Co. of Sacramento, 419 F.3d at 929.  If the
5  public perceives the mark to represent a category of
6  goods or services - the "what," - then the mark is
7  generic.  See Threshold Enters., 445 F. Supp. 3d at 148.
8  If the public thinks of a goods or service producer -
9  the "who," - then the mark is not generic.  See id.
10      "Whether a mark is generic is a question of fact."
11 Yellow Cab Co. of Sacramento, 419 F.3d at 929.
12 Therefore, the fact-specific nature of this inquiry
13 normally precludes courts from determining whether a
14 mark is generic at the pleading stage.  Pinterest Inc.
15 v. Pintrips Inc., 15 F. Supp. 3d 992, 998 (N.D. Cal.
16 2014).  Some courts in the Ninth Circuit have held that
17 such a determination is "inappropriate for resolution on
18 a motion to dismiss".  Webceleb, Inc. v. Procter &
19 Gamble Co., No. 10CV2318 DMS NLS, 2012 WL 460472, at *3
20 (S.D. Cal. Feb. 13, 2012).  Ultimately, courts only
21 decide such fact-specific trademark issues at the
22 pleading stage where "the complaint suffers from a
23 complete failure to state a plausible basis for
24 trademark protection."  Pinterest Inc. at 998-999.
25      Here, Defendant asserts that Plaintiff's moniker,
26 "ALFC," is generic because other companies bear the same
27 initials.  See generally Mot.; See Defendant's RJN.
28 However, Defendant cites no case law in its Motion that

supports the proposition that if multiple parties share the same initials or names, then the names and initials are generic. See generally Mot. A mark is generic if it shares its name with its product, not if it shares its name with a few other parties. See Jerome Gilson & Anne Gilson Lalonde, 1 Gilson on Trademarks § 2.02 (2022).

Under the first prong of the Ninth Circuit's "who-are-you/what-are-you" test, "ALFC" applies to church services. Compl. ¶ 11. Thus, under the second prong, "ALFC" would only be generic if the public perceives the mark to represent a genus of church services, rather than a *source* of church services. Here, "ALFC" – comprised of four seemingly arbitrary initials[2] – does not evidently refer to a broad category of church services.[3] Clearly, Plaintiff's mark does not establish "a complete failure" to assert a plausible infringement claim. See Pinterest Inc. at 992. Therefore, the Court finds that Plaintiff has plausibly alleged that "ALFC"

---

[2] Both inside and outside the Ninth Circuit, courts split in analyzing the distinctiveness of marks made with initials. Cf. YKK Corp. v. Jungwoo Zipper Co., 213 F. Supp. 2d 1195, 1200 (C.D. Cal. 2002) (holding initials were a highly distinctive mark because they derived from an original name that in no way described or suggested the company's products) with CPP Ins. Agency, Inc. v. Gen. Motors Corp., No. CV-79-801-MML, 1980 WL 30349, at *4 (C.D. Cal. Dec. 4, 1980), aff'd, 676 F.2d 709 (9th Cir. 1982) (holding "[i]nitials, especially when . . . derived from a corporate name, are descriptive").

[3] Defendant has cited multiple businesses that are not churches nor religious institutions that use "ALFC" for their trademark. See generally Defendant's RJN. This undermines the proposition that the public perceives "ALFC" to refer to a genus of church services.

13

is not generic.

        b.  *Plaintiff Sufficiently Plead Secondary Meaning to Survive a Motion to Dismiss*

A descriptive mark "define[s] a particular characteristic of the product in a way that does not require any exercise of the imagination." [4] Yellow Cab Co. of Sacramento, 419 F.3d at 927. Since a descriptive mark is not inherently distinctive, it must have a secondary meaning (acquired distinctiveness) to receive protection. Two Pesos at 769. Whether a particular mark has acquired secondary meaning is also a question of fact. Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1262 (9th Cir. 2001). Thus, secondary meaning need only be plead generally to survive a motion to dismiss. See Spirit Clothing Co. v. N.S. Enterprises, Inc., No. CV132203RGKPJWX, 2013 WL 12144107, at *3 (C.D. Cal. July 23, 2013) (holding a plaintiff's allegations sufficient when it alleged it marketed clothing with its mark for 14 years and consumers associated the mark with plaintiff);

---

[4] When determining whether a mark is descriptive or suggestive, the compound term or phrase making up the mark must be considered as a whole. See Zylotrim, Ltd. Liab. Co. v. Superbalife Int'l, Ltd. Liab. Co., No. 08-CV-1917 H (JMA), 2008 U.S. Dist. LEXIS 135310, at *9 (S.D. Cal. Dec. 15, 2008). In Official Airline Guides, Inc. v. Goss, a travel agency called Official Arline Guides, Inc. combined its initials "OAG" with "Travel Planner," to form a protectable common law trademark in "OAG Travel Planner." 856 F.2d 85, 87 (9th Cir. 1988). The Court held "OAG Travel Planner" to be an arbitrary mark, even though "Travel Planner" on its own would likely be a descriptive mark. See id.

BottleHood, Inc. v. Bottle Mill, No. 11-CV-2910-MMA MDD, 2012 WL 1416272, at *5 (S.D. Cal. Apr. 23, 2012) (finding that although a plaintiff provided minimal detail regarding secondary meaning, "a plaintiff does not have to plead secondary meaning to survive a motion to dismiss").

    The Court need not address the mark's classification on the Abercrombie spectrum. Even if the mark was descriptive, Plaintiff's allegations that (1) "ALFC" – a "very large non-denominational Christian Church with two locations" - was founded in 1994, (2) the church has regularly used the mark in commerce, and (3) the mark has "become distinctive and famous" are sufficient to plausibly plead secondary meaning. Compl. ¶¶ 1, 11. Although, as in Bottlehood, Plaintiff's Complaint provides minimal detail regarding the public's perception of the mark, secondary meaning need only be pled generally to survive a motion to dismiss. See generally Spirit Clothing at *3. Therefore, the Court finds that even if the mark is descriptive, Plaintiff has plausibly pled acquired distinctiveness.

    Therefore, "ALFC" is not clearly generic, and Plaintiff has plausibly pled acquired distinctiveness. Thus, Plaintiff has sufficiently alleged it has a valid unregistered trademark in "ALFC." See generally Compl. Accordingly, the Court **DENIES** Defendant's Motion for Judgment on the Pleadings as to Plaintiff's false designation of origin, dilution, cybersquatting, unfair

business practices (pursuant to Bus. & Professions Code §§ 17200, *et. seq.*), and receipt of stolen property claims.

5. Leave to Amend

Although Rule 12(c) does not mention amendments, courts have discretion to grant a Rule 12(c) motion with leave to amend. Lonberg v. City of Riverside, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004). "The court should give leave [to amend] freely when justice so requires." Fed. R. Civ. P. 15(a)(2). In the Ninth Circuit, "Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality." United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981). Against this extremely liberal standard, the Court may consider "the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility." Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001).

Here, Plaintiff's Complaint cannot be cured because Plaintiff cannot allege it has a valid registered trademark in "ALFC." See Defendant's RJN. Given that the USPTO does not contain Plaintiff's "ALFC" mark, no additional facts could sustain a 15 U.S.C.S. § 1114 trademark infringement claim. See id. Because the defective 15 U.S.C.S. § 1114 claim cannot be cured through amendment, leave to amend would be futile. See Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc., 817 F. App'x 380, 385 (9th Cir. 2020) (affirming

district court's denial of leave to amend where no additional facts are available that would support plaintiff's claim to cure its deficiencies). Therefore, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings as to Plaintiff's 15 U.S.C.S. § 1114 trademark infringement claim **WITHOUT LEAVE TO AMEND.**

### III. CONCLUSION

Based on the foregoing, the Court **DENIES in part** Defendant's Motion for Judgment on the Pleadings as to Plaintiff's false designation of origin, dilution, cybersquatting, unfair business practices (pursuant to Bus. & Professions Code §§ 17200, *et. seq.*), and receipt of stolen property claims and **GRANTS in part** as to Plaintiff's 15 U.S.C.S. § 1114 trademark infringement claim **WITHOUT LEAVE TO AMEND.**

**IT IS SO ORDERED.**

DATED: October 24, 2022          /s/Ronald S.W. Lew
                                 **HONORABLE RONALD S.W. LEW**
                                 Senior U.S. District Judge